**UNITED PHARMACAL CORPORATION et al., Defendants, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 5928.**

United States Court of Appeals
First Circuit.

July 25, 1962.

Solomon H. Friend, New York City, with whom Bass & Friend, New York City, was on brief, for appellants.

Daniel B. Bickford, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., William W. Goodrich, Asst. Gen. Counsel, and Walter E. Byerley, Atty., Washington, D. C., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

In July 1961 the United States filed a complaint in the United States District Court for the District of Massachusetts against Metabolic Products Corp., a Massachusetts corporation, and Edward Y. Domina, its president, for a temporary and permanent injunction restraining them from introducing a drug variously called "Prostall," "Prostex" and "Urex" into interstate commerce on the ground that the drug was misbranded within the meaning of 21 U.S.C.A. § 352(a) or § 352(f) (1). The court immediately issued a temporary restraining order and, after hearing on August 3 and 4, on August 9 issued a consent preliminary injunction ordering that the defendants, " * * * their agents, employees, representatives and all other persons in active concert or participation with any of them, be and they are hereby preliminarily restrained and enjoined under 21 U.S.C. 332(a) until further order of the Court from violating 21 U.S.C. 331(a) by causing the introduction or the delivery for introduction into interstate commerce of said drug 'Prostall,' 'Prostex,' and 'Urex' which is misbranded within the meaning of 21 U.S.C. 352(a) or 352 (f) (1) * * *." Certified copies of this decree were served on the appellant, United Pharmacal Corporation, another Massachusetts corporation, on August 28, 1961.

Four days later on September 1, 1961, United Pharmacal filed a motion in the suit against Metabolic Products for construction of the consent decree and a declaration that the decree did not bind it and submitted a supporting affidavit of its vice president and treasurer, the appellant Vernon A. Bahr, disclosing a contractual relationship between United and Metabolic for the sale of the drug "Urex." On September 5, the court below orally denied United's motion on the ground that it was not a party to the suit against Metabolic and suggested that the correct procedure would be for United to file a complaint for a declaratory judgment. Accordingly, on September 8, 1961, United filed suit for a declaratory judgment and moved for an order to show cause in order to obtain immediate disposition of the issue posed.

While the motion for an order to show cause was pending due to the absence of the judge, an agent of the Food and Drug Administration writing from St. Albans, New York, on* September 12, solicited a bottle of Urex from United and United filled his order on September 22 by shipment from its place of business in Auburn, Massachusetts. Thereupon, on September 29, 1961, the United States filed a petition in the court below for an order to show cause why United, Bahr, and Donald Sohn, United's president, should not be held in criminal contempt for violating the consent preliminary injunction issued against Metabolic, it being alleged that United, Bahr and Sohn were in active concert and participation with Metabolic with respect to the sale of Urex and were bound by the preliminary injunction. After a consolidated hearing on United's complaint for a declaratory judgment and the Government's petition for adjudication in contempt, the court below denied the application for a declaratory judgment and, finding United, Bahr and Sohn guilty of criminal contempt, entered the judgments sentencing them to fines from which they have appealed.

The basis for holding the appellants in criminal contempt is a distributorship agreement, entered into so far as appears at arms-length, between Bahr, Sohn and two others who later sold out to Bahr and Sohn, on behalf of United on June 2, 1958. By the terms of this agreement Metabolic, in consideration of 300 of 1000 authorized shares of United, that is to say 30% ownership of United, agreed to give United nearly exclusive rights to the sale of the drug in the United States.[1] For present purposes there is no need to state the other terms

---

1. The grant to United is subject to a pre-existing, non-exclusive, non-transferable right to use the name "Urex" enjoyed by a Florida dealer and Metabolic re-

of the agreement in detail. It will suffice to say that United agreed to purchase its entire requirements for the drug from Metabolic at fixed cash prices except that, if for any reason whatsoever Metabolic should be unable to furnish the drug, United could manufacture the drug itself or cause the drug to be manufactured for it by someone else.[2]

We turn now to the question whether United and its two principal officers, who owned 70% of its stock, are bound by the preliminary injunction issued against Metabolic.

That injunction is couched in the terms of Rule 65(d) Fed.R.Civ.P., 28 U.S.C.A., which so far as material provides that every order granting an injunction " * * * is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

United is not a subsidiary of Metabolic. 30% stock ownership of the former by the latter does not make it one. Nor has the United States shown that United is a mere pawn or tool in the hands of Metabolic. So far as appears they are wholly separate and independent corporations each going its separate way linked together only by Metabolic's minority stock ownership of United and the distributorship agreement entered into between them. Indeed, counsel for the United States in effect conceded that Metabolic was not using United as its alter ego or cat's paw to pull its chestnuts out of the fire when he said at the outset of the hearing that he was con-vinced that Metabolic had attempted to comply with the injunction and that: "We have no indication that Metabolic Products has attempted to distribute this product in violation of the injunction." [3]

Since it is conceded that United had received actual notice of the order granting the preliminary injunction against Metabolic, and there is no basis for finding that United or its officers, Bahr and Sohn, were agents, servants or employees of Metabolic, the only question is whether United and its officers were "in active concert or participation" with Metabolic when United made its shipment to the government agent in St. Albans.

It may very well be, although we do not need to decide, that prior to the preliminary injunction Metabolic and United had been actively collaborating in pushing the drug on the market. But the question is not what Metabolic and United had been doing. Their past contractual relationship is not controlling. The question is whether United and its officers aided and abetted Metabolic in violating the preliminary injunction for, as the late Judge Learned Hand pointed out in Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 833 (C.A. 2, 1930): " * * * the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, an act of a party. This means that the respondent must either abet the defendant [i. e. the person enjoined], or must be legally identified with him." Wherefore, as Judge Hand went on to point out, if the person enjoined is not involved in the contempt, an employee, and by the same token one

served the right to sell its drug under the name of "Urex" to its customers as of July 1, 1958.

2. The agreement required that United pay Metabolic a royalty on the amounts received from sales of the drug manufactured by United or purchased from outside sources. It exempted the manufacture of less than 5,000 hundred-capsule bottles by United or the purchase of the same number of bottles from outside sources. But there is no evidence that United bought a sufficient quantity of the drug from any outside source to subject itself to royalty payments.

3. It is conceded that the bottle of "Urex" shipped by United to the agent of the Food and Drug Administration had not been manufactured or sold by Metabolic but had been purchased by United from another manufacturer.

**518**

in active concert or participation, cannot be either, because the decree has not been violated. The reason for this is clear: " * * * for it is not the act described which the decree may forbid, but only that act when the defendant does it." Ibid. See also Reich v. United States, 239 F.2d 134 (C.A. 1, 1956), cert. denied, 352 U.S. 1004, 77 S. Ct. 563, 1 L.Ed.2d 549 (1957).

Since it is conceded that Metabolic itself did not violate the injunction, since United was not identified with Metabolic in the sense of being its agent, servant, subsidiary, tool, cat's paw or alter ego, and since it did not obtain the drug which it shipped to the government agent from Metabolic but from an outside source, it cannot be said to have acted in concert or participation with Metabolic in violating the injunction.

Judgment will be entered vacating the judgments of the District Court and remanding the case to that Court with directions to dismiss the government's petition for adjudication in criminal contempt.