**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Nickolas GUERRA, Sr., et al., Defendants.**

**Civ. A. No. 8223.**

United States District Court
D. Colorado.

Jan. 6, 1965.

Lawrence M. Henry, U. S. Atty., for Dist. of Colorado, James M. Clark, Asst. U. S. Atty., Denver, Colo., Louis J. Lombardo, Atty., Tax Div., Dept. of Justice, Washington, D. C., of counsel, for the United States.

Charles S. Vigil, Denver, Colo., for defendants.

DOYLE, District Judge.

The above matter was tried to the Court and inasmuch as there is little evidentiary dispute, formal findings are deemed unnecessary. The Court's findings of facts sufficiently appear in the opinion which follows.

The action seeks to foreclose the tax lien of the United States for unpaid taxes based upon unlawful possession of marihuana. The interests of Nickolas Guerra in certain real property are sought, together with a judgment against Guerra for the unpaid tax.

On January 30, 1962, the Commissioner of Internal Revenue, a delegate of the Secretary of the Treasury, made an assessment of excise taxes arising pursuant to Section 4741 of the Internal Revenue Code of 1954 (Title 26 U.S.C.A. § 4741). The amount of the assessment was $118,800.00. Notice of the assessment stating the amount of the liability and demanding payment was given, and on January 31, 1962, and again on June 28, 1962, notices of lien were filed with the County Clerk of Pueblo County, Colorado (the county within which the real estate in question is located).

Section 4741 of the Internal Revenue Code, upon the basis of which the Treasury Department's assessment was made, provides for the payment of a special tax of $100.00 per ounce of marihuana, or fraction thereof, upon each transfer to any person who has not paid the special tax and who has not registered pursuant to the provisions of Sections 4751 to 4753.[1]

The several applicable code provisions are somewhat intricate and will be discussed hereinafter.

The evidence at the trial establishes that in January, 1962, the United States Customs at El Paso, Texas, received information that a quantity of marihuana was to be transported from Juarez, Mexico, to Pueblo, Colorado. As a consequence, agents were sent to Juarez and they there located a certain 1951 green Oldsmobile automobile which reportedly was to be used to transport the marihuana. Other agents observed the bridges from Juarez in an effort to see the automobile in question arrive in the United States. It was seen and was followed to the driver's home in El Paso. There, Colorado license plates were attached to the car and it proceeded into New Mexico. At Oro Grande, which is just south of Alamogordo, the vehicle was stopped by New Mexico State Police and taken to their headquarters at Alamogordo. There the Customs Agents who had been following the vehicle from Juarez and El Paso, joined the investigation. The car was searched and the marihuana was discovered. One pound was removed and was utilized as a basis for prosecution against the driver of the automobile, Jesus Hernandez. Hernandez entered a plea of guilty and, after reading a magazine article which described the consequences of marihuana involvement, he agreed to cooperate with the Customs Agents in making the delivery as planned.

Two days after the arrest of Hernandez the party again started out, the

1. Section 4741 provides as follows:
"(a) Rate.—There shall be imposed upon all transfers of marihuana which are required by section 4742 to be carried out in pursuance of written order forms taxes at the following rates:
"(1) Transfers to special taxpayers.— Upon each transfer to any person who has paid the special tax and registered under sections 4751 to 4753, inclusive, $1 per ounce of marihuana or fraction thereof.
"(2) Transfers to others.—Upon each transfer to any person who has not paid the special tax and registered under sections 4751 to 4753, inclusive, $100 per ounce of marihuana or fraction thereof.
"(b) By whom paid.—Such tax shall be paid by the transferee at the time of securing each order form and shall be in addition to the price of such form. Such transferee shall be liable for the tax imposed by this section but in the event that the transfer is made, in violation of section 4742 without an order form and without payment of the transfer tax imposed by this section, the transferor shall also be liable for such tax."

agents convoying Hernandez toward Pueblo. There were two agents' cars and at all times agents rode in the Hernandez car, and sometimes one of them drove it. They stopped at Vaughn, New Mexico, to repair the Oldsmobile and then proceeded to Raton, arriving there at about midnight on the twenty-sixth of January.

Before proceeding from Raton, Hernandez made a telephone call to Guerra in Pueblo, and told the latter that he had had car trouble and requested that Guerra forward some money. At first Guerra refused to accept the collect call, but when Hernandez said over the telephone that he had a message from Mexico, the call was received, and subsequently a Fifteen-dollar Money Order was forwarded. The convoy then proceeded to Walsenburg, Colorado, and at this point the plot thickened very considerably. Two of the officers there concealed themselves in the trunk of the Oldsmobile. The trip was then made in this manner from Walsenburg to Pueblo, a distance of approximately forty miles.

Hernandez stopped at a filling station in Pueblo and called Guerra. The officers who were concealed in the trunk had radio communications with the Customs officers outside who were observing. About fifteen minutes after the call was made, a man who was later identified as Nick Guerra, appeared in a 1961 Plymouth. He picked up Hernandez, drove around a short distance, and then returned, following which Hernandez took the wheel of the Oldsmobile and followed Guerra to his farm some six or seven miles outside of Pueblo. Some precaution was taken on the way. Guerra stopped, apparently to ascertain whether they were being followed. Actually, the Customs officers were some distance away and were making observations with field glasses but could not be observed. After this Guerra led Hernandez to his house and into a garage. According to Hernandez' testimony, Guerra asked where the "load" was and was told that it was inside the door panels and under the hood. They, Hernandez and Guerra, then proceeded to remove the panels and took two or three paper bags and placed them on the floor, or on a table in the garage. Guerra went inside the house and returned with a glass jar containing marihuana and said, "This is the type of stuff I have." While Guerra had been in the house the agents got out of the trunk and hid behind the automobile. They arrested him when he returned with the glass jar. At this point Guerra shouted (to his family) that the "federales" were there. The marihuana was then inventoried, the house was searched, Guerra was charged in a criminal complaint in connection with the marihuana which he had had in his possession, and the present civil action was instituted with respect to that which was transported in the Oldsmobile automobile by Hernandez.

The basic question is whether Guerra is shown by the evidence to be a transferee of the marihuana within the meaning of the statute; if so, he is subject to the tax.

The statutory definition is surprisingly broad. Section 4761(4), Internal Revenue Code of 1954, provides:

"The term 'transfer' or 'transferred' means any type of disposition resulting in a change of possession, but shall not include a transfer to a common carrier for the purpose of transporting marihuana."

Section 4744(a) declares that:

"It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a)—

"(1) to acquire or otherwise obtain any marihuana without having paid such tax, or

"(2) to transport or conceal, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained.

Proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order

**4**

form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this subsection and of liability for the tax imposed by section 4741(a)."

Thus, a condition of prosecution under section 4744(a) is that the person be a transferee required to pay the transfer tax. Under the terms of section 4761(4) a person becomes a transferee when there is a transfer. This means any type of disposition resulting in a change of possession. Therefore, finally, the defendant is a transferee subject to the payment of the tax if the evidence establishes that there was a disposition resulting in a change of possession.

The defendant focuses almost entirely on the proposition that he is not shown by the evidence to have been in possession of the seized marihuana. He cites a number of cases in support of his contention that there was no change of possession. It can be argued even more forcefully that the sections here in question contemplate a bona fide disposition resulting in a change of possession in order to have liability for the tax. The gist of this is that the statute is written in contemplation of genuine transfers since it names importers, manufacturers and compounders of marihuana, and also producers, physicians, dentists, and persons engaged in research. It also sets up machinery for making formal transfers, whereas here the entire transaction was artificial in that, since there was no intent to actually transfer possession, there can be no taxable event.

█ It is true that the statute contemplates formal and perhaps genuine transfers; however, these statutes are also written in contemplation of informal and illegal transfers of contraband.

The prohibitive tax imposed by section 4741(a) (2) provides ample evidence of this congressional intent. Moreover, the broad and all-inclusive definition of "transfer" in section 4761(4) shows an intent to subject the transaction to a tax even though there may be no intent to finally relinquish possession to the "transferee."

█ The important factor here is that the evidence establishes beyond question that there was a pre-arranged plan whereby Guerra was to receive the 75 pounds of marihuana. Unquestionably, Hernandez was instructed to deliver the marihuana to him. The agents observed the telephone calls made from Raton, New Mexico, and it is not disputed that Guerra responded to this call by sending a Western Union Money Order intended to aid Hernandez in completing the delivery. After arrival in Pueblo, Guerra actively aided in completing the delivery to his home which was several miles outside of Pueblo, and after arrival Guerra participated in the unloading of the marihuana. Thus, it must be concluded that there was a change of possession from Hernandez to Guerra and intent on the part of Guerra to accept the possession. The breadth of the statutory definition of "transfer" embraces this transaction inasmuch as there was an unquestioned intent on the part of Guerra to take possession and there was an actual delivery to him.

It is argued that section 4741(b) contemplates that the transferor shall also be liable for such tax and inasmuch as Hernandez could not be regarded as a transferor subject to the tax, so also Guerra could not be a transferee. It is unnecessary to determine whether under these circumstances Hernandez would be liable. It is sufficient to hold that there was a transfer within the meaning of Sections 4741 and 4761(4). The defendant is, therefore, liable.

Although there is a dearth of authority on this question, there has been one decision by the Court of Appeals for the Seventh Circuit, which is similar on its facts to the case at bar. That is United States v. Oropeza, 275 F.2d 558. There, as in the present case, the Customs officials worked in conjunction with two informers in transporting marihuana from

Mexico to Chicago. As in the present case, the agents concealed themselves until the defendant was contacted in Chicago and the load car was taken to a garage and the unloading had commenced. At that point the arrest was made and certain admissions obtained. This was a criminal prosecution. However, the criminal definition contained in Section 4744(a) declares that it shall be unlawful for any person who is a transferee required to pay the transfer tax, to acquire or otherwise obtain marihuana without paying the tax. Thus, the transaction must be a taxable one in order for the government to prosecute criminally, and the statutes are not only interrelated—they are inseparable. In holding that the defendant in Oropeza had come into possession notwithstanding the prearrangement which has been briefly described, the Court of Appeals, speaking through Chief Judge Hastings, said:

"The sensitive element in the crime charged is possession. A transferee is one who comes into possession of marihuana. If there is a showing of possession, that fact plus the absence of an order form required by 26 U.S.C.A. § 4742 is presumptive evidence of guilt under section 4744 and of liability for the tax imposed by section 4741(a). The Government has set this chain reaction in motion by sufficiently proving Oropeza's possession. Although there were conflicts between government witnesses and Oropeza on several disputed points, these matters go to credibility. * * * "

■■ Thus, Oropeza holds that one who comes into possession of marihuana is subject to the tax and is also subject to criminal prosecution regardless of the fact that the delivery was not genuine.

It is the showing of possession plus the absence of an order form that controls. It seems illogical to impose a transfer tax where there was never an intent to effect an actual transfer, and yet the statutes appear not only to permit but to require such imposition. Undoubtedly, such a tax could not be imposed if there were an unwitting and unintentional acceptance, but such a case is not before us. Therefore, where as in the case at bar, there is an actual intent to accept delivery and there is an acceptance of the delivery, we hold as we must, that the transaction is within the scope of the statutory scheme.

The Government relies on two other Seventh Circuit decisions: United States v. Davis, 272 F.2d 149, and United States v. Taylor, 266 F.2d 310. These were also criminal cases in which it was charged that the defendant knowingly and with intent to defraud, concealed and facilitated transportation concealment after unlawful importation of marihuana. Although these decisions are somewhat analogous in that in each instance, as in the present case, the delivery was facilitated by Customs agents, they do not involve the question of transfer which is now before us.

For the foregoing reasons it is concluded that the plaintiff is entitled to judgment against the defendant Nickolas Guerra in the amount of $115,005.85, and also a judgment upholding the validity of the plaintiff's lien against the property of the defendant and authorizing the foreclosure of the said lien. It is

Directed that the plaintiff prepare an appropriate judgment and submit the same to counsel for defendant for approval as to form. The entry of judgment will be deferred until the written judgment is signed.