**UNITED STATES of America**

**v.**

**JOHNS–MANVILLE CORPORATION,**
Keasbey and Mattison Company,
and
**Certain-teed Products Corporation.**
Civ. A. No. 31791.

United States District Court
E. D. Pennsylvania.
Aug. 10, 1965.

Raymond K. Carson and Rodney O. Thorson, Dept. of Justice, Washington, D. C., for United States.

Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Johns-Manville Corp.

Henry T. Reath, Philadelphia, Pa., for Keasbey & Mattison Co.

John G. Harkins, Jr., Philadelphia, Pa., for Certain-teed Products Corp.

VAN DUSEN, District Judge.

This case is before the court on the motion of Certain-teed Products Corporation (hereinafter called "Certain-teed") for summary judgment under F.R. Civ.P. 56 (Document 34).

Part of the background of this case has been reported in a previous decision of this court, United States v. Johns-Manville Corporation, 237 F.Supp. 885 (E.D. Pa.1964), in which a motion for summary judgment by Keasbey and Mattison Company (hereinafter "K & M"), a previous defendant in the instant case, was granted. Essentially, the facts as reported in the prior case, and as they apply to the instant case, are that the United States Government filed a Complaint under § 4 of the Sherman Antitrust Act (15 U.S.C. § 4) against three companies, seeking injunctive relief against alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. The Complaint was filed on July 25, 1962. More specifically, the Complaint alleges that the defendants, Johns-Manville Corporation (hereinafter called "J-M"), K & M and Certain-teed, combined and conspired in unreasonable restraint of, and to monopolize, interstate and foreign trade and commerce, and that defendants have attempted to monopolize the aforesaid interstate and foreign trade and commerce, in asbestos-cement pipe and couplings.

Certain-teed did not enter the asbestos-cement pipe and coupling business until June 1, 1962, on which day they acquired the assets of K & M pertaining to the manufacture, sale and distribution of such pipe and couplings. This acquisition was pursuant to a written agreement between Certain-teed and K & M which was dated April 16, 1962. Thus, Certain-teed only owned and operated the business which allegedly violated the antitrust laws for slightly less than two months before the Government filed its Complaint seeking injunctive relief against the activities of Certain-teed in its operation of the acquired business. The Government's case against Certain-teed is founded on the contention that K & M was operating its asbestos-cement pipe and coupling business in a manner violative of §§ 1 and 2 of the Sherman Act prior to June 1, 1962, and that when Certain-teed acquired it, they continued to conduct the business in the same illegal manner. K & M's Motion for Summary Judgment was granted principally because of its abandonment of its business activity in this area and a complete lack of evidence that there was any probability that it would ever re-enter the asbestos-cement pipe business again (see opinion at 237 F. Supp. 885). Further, it was held that Certain-teed was not a corporate successor to K & M such that each company was liable for the acts of the other. Thus, the question before the court on this motion is whether there is any evidence that K & M was violating § 1 and/or § 2 of the Sherman Act and, if there is, is there any evidence that Certain-teed joined in and furthered this unlawful conduct when it acquired the assets of K & M pertaining to the asbestos-cement pipe and coupling field.

The initial issue to be resolved is what constitutes the record in

this case. The Government has supplemented the record which was before the court on K & M's Motion for Summary Judgment [1] and has also moved to strike certain portions of affidavits which constituted a part of the record on K & M's Motion and which are also offered as a part of the instant record. Rulings on motions to strike affidavits and portions thereof and on objections to parts of the record are contained in Appendix A to this Memorandum Opinion.

Aside from the above motions to strike, the Government has changed the record in the instant case from that before the court on K & M's motion for summary judgment by the filing of 12 affidavits (Documents 52–63). Since Certain-teed has not moved to strike these affidavits but objects only to their relevancy, they will be considered a part of the instant record to the extent that they are relevant to the period and issues in question upon the instant motion.[2]

The Government and defendant Certain-teed also entered into a stipulation (Document 65) that the court might, in disposing of the instant motion for summary judgment, consider testimony given at the companion criminal trial [3] (Criminal No. 21118, United States v. Johns-Manville Corporation et al., D.C., 231 F.Supp. 690), exhibits identified under oath at that trial, and GX–3004, which was marked for identification in said trial, and, further, that the court

might consider as genuine and authentic for the purposes of this motion all other documents marked for identification in connection with said criminal trial. The above testimony, exhibits and documents may be considered only to the extent that they are relevant to the instant motion.

To summarize, the record before the court on Certain-teed's motion for summary judgment consists of the following:

A. The documents listed in footnote 1 of the December 22, 1964, opinion in this case [4] as 1, 10, 33, 36 and 38.

B. Certain-teed's Interrogatories Directed to the Plaintiff (Document 11) and the Government's answers to certain of these interrogatories propounded by Certain-teed (Document 27), as well as Affidavit of Government in Support of its Motion For Stay of Discovery Proceedings (Document 19).

C. Affidavits attached to Document 34, except the portions excluded by the rulings in this Memorandum Opinion, including Appendix A, and of Arthur Graves dated February 25, 1965 (Document 68).

D. Twelve affidavits filed by the Government as Documents 52 to 63.

E. Material referred to in Stipulation filed March 9, 1965 (Document 65), which is summarized at page 4 above.[5]

---

1. See footnote 1, p. 886, of 237 F.Supp., for the record before the court on K & M's motion for summary judgment.

2. Counsel for Certain-teed at oral argument (pp. 16 and 17 of Document 64) did object to the statement of George Feskoe in his affidavit (Document 63) that Italit's sales of asbestos-cement pipe have decreased substantially since 1959. The objection was based on the fact that Mr. Koons, the President of Italit, Inc., testified at the criminal trial (N. T. 9234, 9235, Criminal No. 21118) that the sales of Italit increased by $1,000,000. from fiscal 1959 to fiscal 1960 and then returned to the 1959 level in fiscal 1961. Due to the conflict of Mr. Feskoe's statement with that of Mr. Koons, Mr. Fes-

koe's statement in his affidavit that the sales declined in the period from 1959 to the date of this suit will not be considered.

3. Insofar as the testimony is concerned, compare Appalachian Coals, Inc. v. United States, 288 U.S. 344, 377, 53 S.Ct. 471, 77 L.Ed. 825 (1933); United States v. Ward Baking Company, 243 F.Supp. 713 (E.D.Pa., opinion of 6/21/65, p. 13).

4. United States v. Johns-Manville Corporation, supra, at 886 of 237 F.Supp.

5. With reference to the exhibits referred to in the letter dated March 3, 1965 (which has been attached to Document 72) from counsel for plaintiff, GX–410 and GX–450 are not relevant to this ap-

■ In order to prove its case against Certain-teed, the Government must establish two facts: (1) that K & M and others were engaged in an unlawful conspiracy in violation of the Sherman Act prior to and up to the time that Certain-teed agreed to purchase K & M's assets (April 16, 1962); and (2) that Certain-teed knowingly participated in this unlawful conspiracy prior to the date the Complaint was filed, i. e., July 25, 1962. The Government takes the position that, with the exception of the allegation of Certain-teed's having joined in the offenses charged, the allegations in the instant Complaint are substantially similar to those in the criminal indictment (p. 4, Government's brief, Document 72). The Government argues from the above fact that, when the court did not grant the motions of J-M and K & M for acquittal in the companion criminal trial on the issue of whether they had conspired in unreasonable restraint of trade, it held that the Government had presented sufficient evidence from which a jury could find beyond a reasonable doubt that this conspiracy existed. Thus, the Government concludes from this ruling that there must exist issues of material fact in the instant case on the question of K & M and others being engaged in an illegal conspiracy prior to Certain-teed's agreement to purchase K & M's assets.

The fact that the court found in the criminal trial that there was sufficient evidence from which a jury could find beyond a reasonable doubt that this conspiracy existed within five years of June 1, 1962, does not mean that there was evidence that this conspiracy persisted until April 1962 or that the defendant participated in it between April 1962 and July 25, 1962. If there was evidence in the criminal trial that the defendants conspired as charged at any time during the indictment period, it was necessary to submit this issue to the jury. Thus, the fact that the defendants' motions for acquittal were denied in the companion criminal case does not conclusively establish that the issues of material fact exist as to whether or not K & M and others were engaged in an unlawful conspiracy at the time that Certain-teed agreed to purchase K & M's assets. In fact, as was stated in the opinion granting K & M's motion for summary judgment:

"The principal evidence in the criminal trial justifying any finding of violations of the antitrust laws concerned events prior to the spring of 1957. Even assuming such violations could be established by the weight or fair preponderance of the evidence, there is no showing that they continued during the five-year period from June 1, 1957, to June 1, 1962."

Although there was no direct evidence of a conspiracy after May 31, 1957, there was direct evidence from which a conspiracy could have been established prior to this date, from which a continuing conspiracy past this date could have been inferred.

■ Assuming that an issue of fact exists as to whether or not there was an illegal conspiracy between K & M and others in April of 1962, the second requisite that the Government must establish to be entitled to the injunction sought in the Complaint is that Certain-teed joined this illegal course of conduct in the three-month period between April 16, 1962, when it agreed to purchase K & M's asbestos-cement pipe assets, and the date this action was instituted—namely, July 25, 1962. The four affidavits filed with Certain-teed's motion for summary judgment (Document 34) explicitly deny that Certain-teed knowingly entered any such course of conduct and state affirmatively that Certain-teed has conducted

---

plication in view of their remoteness in time to the period April 1962–July 1962 and their lack of connection with this defendant. The other exhibits mentioned in that letter are also not relevant to this application, particularly because of United Mine Workers of America v. Pennington, et al., 85 S.Ct. 1585 (U.S. Supreme Court, Opinon of 7/7/65), and cases there cited.

its business independently, without consultation with any competitor. Further, a directive was issued on July 16, 1962, to all the personnel and agents of Certain-teed concerned with asbestos-cement pipe, requesting them to scrupulously avoid contacts with competitors and to conduct the sale of asbestos-cement pipe in full compliance with the antitrust laws. This directive was issued at the request of the President of Certain-teed, Mr. Malcolm Meyer, by the Secretary of Certain-teed, Mr. Arthur Graves (Document 68). The four affidavits discussed above which deny Certain-teed's participation or entrance into any illegal conspiracy are those of (1) Mr. Meyer, the President and person most intimately concerned with the purchase of these assets from K & M, (2) Mr. McCaskill, under whose general supervision as General Sales Manager of Bestwall Certain-teed Sales Corporation the responsibility for the sale of asbestos-cement pipe was placed after the acquisition of the assets from K & M, (3) Mr. Reichel, who was in charge of asbestos-cement pipe sales from June 1, 1962, until after the instant Complaint, July 25, 1962, and (4) Mr. Davis, who has been General Manager of Certain-teed's Pipe Division since May 1, 1963. The first three of these affiants were obviously intimately connected with Certain-teed's policy with regard to the selling of asbestos-cement pipe during the one-and-a-half-month period from the acquisition of these assets until the issuance of the instant Complaint. As such, their denial under oath of any participation in a conspiracy with any competitor to set prices or restrain trade must be accepted unless an issue of fact is raised by conflicting evidence elsewhere in the record. Summary judgment is appropriate where uncontradicted affidavits and sworn testimony are submitted in negation of a generally pleaded conspiracy claim. Gold Fuel Service, Inc. v. Esso Standard Oil Co., 306 F.2d 61 (3rd Cir. 1962); Fiumara v. Texaco, Inc., 204 F.Supp. 544 (E.D.Pa.1962), aff'd. 310 F.2d 737 (3rd Cir. 1962); cf. Delaware Valley Marine Supply Co. v. American Tobacco Co., 297 F.2d 199 (3rd Cir. 1961), cert. den. 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed.2d 843 (1962).

The Government takes the position that there is evidence in the instant record which rebuts the above affidavits and raises issues of fact such that summary judgment is not appropriate. The Government raises four inferences which it draws from facts in the instant record, which inferences it contends contradict the defendant's affidavits denying a conspiracy:

(1) Uniformity of prices charged by K & M, Certain-teed and J-M for asbestos-cement pipe are evidence from which a conspiracy can be inferred;

(2) The use of "so-called agency agreements" by which Certain-teed controls the price at which distributors sell Certain-teed's asbestos-cement pipe is evidence from which collusive price fixing may be inferred, as some type of control of the price charged by these distributors is necessary to implement a price fixing conspiracy;

(3) There is evidence on the record of a concerted effort by the defendants to restrict competition by advancing to agencies specifications which were designed to restrict or eliminate competition from foreign-made asbestos-cement pipe;

(4) An issue of material fact is present on the instant record as to whether or not a relevant market exists in asbestos-cement pipe for purposes of establishing a conspiracy, and/or an attempt, to monopolize the field of asbestos-cement pipe and couplings.

The Government seeks to establish that the prices charged by J-M, K & M and Certain-teed for asbestos-cement pipe are identical by the introduction into evidence of Exhibits A through F attached to the affidavit of Raymond K. Carson (Document 61). These exhibits show the price charged

by Certain-teed for its class 150 asbestos-cement water pipe in actual sales made from 3/30/62 to 4/11/63 and also show the book price charged by Certain-teed for this product at the time of such sales. In every instance, the actual price charged by Certain-teed for this class of pipe was lower than the book price. The affidavit of Roy C. Cook (Document 62), an economist employed by the Antitrust Division, states that the Certain-teed book prices, as indicated by these exhibits, are identical with the price lists for this class of pipe of K & M and J-M dated 6/1/61 and 4/15/61, respectively, which were received in evidence at the criminal trial as GX-549, GX-515 and GX-526. Although these two affidavits might evidence an identity of book prices between the various companies, they have no relevancy to an identity of actual prices, as in every exhibit the actual price charged is shown to be lower than the book price.[6] Further, only one of the exhibits is concerned with a sale of asbestos-cement pipe between April 16 and July 25, 1962. Thus, the relevance of these exhibits is limited.

Even assuming an identity of prices between these corporations, this alone is not a permissible basis for an inference of a conspiracy in the face of affidavits alleging independent action and absence of conspiracy. It has been held on numerous occasions that price uniformity alone is not sufficient to support a finding of conspiracy. Cement Mfgrs. Ass'n. v. United States, 268 U.S. 588, 606, 45 S.Ct. 586, 69 L.Ed. 1104 (1925); United States v. International Harvester Co., 274 U.S. 693, 708–709, 47 S.Ct. 748, 71 L.Ed. 1302 (1927); Gold Fuel Service, Inc. v. Esso Standard Oil Co., supra; Fiumara v. Texaco, Inc., supra. Conscious parallelism of prices is not a substitute for proof of conspiracy nor, in the instant case, could a conspiracy even be inferred from such action. Delaware Valley Marine Sup. Co. v. American Tobacco Co., supra (also see footnote 3 of

opinion granting K & M's motion for summary judgment, 237 F.Supp. at 889).

■ Turning to what the Government calls Certain-teed's "so-called agency agreements," otherwise known as *del credere* agency agreements, the Government relies on an affidavit of Henry J. Askew, Jr. (Document 52) and an exhibit attached to this, which is an agreement titled APPOINTMENT OF SALES AGENT FOR ASBESTOS-CEMENT PIPE, entered into by the Browning Manufacturing Co., of which Mr. Askew is President, with Certain-teed. This agreement was entered into on November 23, 1962, and is, therefore, limited in its relevancy to the type of agreements which Certain-teed entered into with distributors prior to the date of the Complaint. The feature which the Government seeks to emphasize about this agreement is that Certain-teed dictated the prices of asbestos-cement pipe sold by Browning, but in all other respects Browning resembled an independent distributor. Even assuming that this agreement is typical of agreements entered into by Certain-teed prior to the date of the filing of the instant Complaint, the undersigned is unable to understand how an inference of a conspiracy between Certain-teed and J-M and/or K & M can be drawn from this fact. Because vertical control of the price that a company's product is sold for may be necessary before a horizontal price fixing agreement can be effective, once this vertical control is established an inference does not arise that there is a horizontal conspiracy. To draw proof of a conspiracy from such a circumstance is to strain credulity. To allow this to be proof of conspiracy is to allow speculation, not a plausible inference, to form an issue of fact.

Insofar as the Government relies on cases such as Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), the Complaint does not allege any per se violation of § 1 of the Sherman

6. Exhibits A–F attached to this affidavit consist of Trade Reports showing the actual selling price, as well as the book price.

Act due to price fixing or resale price maintenance.[7] Part VI of the Complaint (Document 1) alleges a combination and conspiracy in unreasonable restraint of and to monopolize trade and commerce in asbestos-cement pipe and couplings, as well as an attempt to monopolize such trade and commerce. It is alleged that the agency agreements were made "to further facilitate control over the [horizontally] agreed-upon delivered prices" (par. 17d), rather than as a device for price fixing between K & M or Certain-teed and its *del credere* agents.

█ The third contention of the Government is that the record contains an issue of fact as to the allegation that the defendants conspired to promote exclusionary specifications. More specifically, the Government's claim is that there is evidence that Certain-teed joined a conspiracy with J-M and/or K & M to restrict the purchase of asbestos-cement pipe to that produced by domestic manufacturers through persuading agencies such as ASTM and various municipalities to adopt specifications which applied only to domestic pipe. The Government's initial argument is that this allegation in the Complaint is not denied by Certain-teed and that it, therefore, remains to create an issue of fact. Since, as discussed above, Certain-teed's affidavits emphatically deny any knowledge of the joinder of a conspiracy to restrict competition by Certain-teed, this allegation

of the Complaint has clearly been denied by Certain-teed. The Government also filed three affidavits in an effort to support their allegation as to this concerted effort to promote exclusionary specifications. The first of these was an affidavit by Mr. Askew (Document 52), which contained a statement that a Certain-teed sales representative, Mr. Kuhfeldt, in southern Texas had indicated doubt to him as to how long the domestic cement pipe manufacturers could keep the specifications required by the Water Board of the City of San Antonio limited to pipe of domestic manufacture. The second affidavit by J. W. Moore (Document 59) states that he was present when another sales representative of Certain-teed, Mr. Rose, "publically urged" the purchasing authority at Lockney, Texas, to reject foreign pipe. Mr. Moore also stated that a bid of his for supplying asbestos-cement pipe had been turned down by the City of Portales, New Mexico, because his pipe was of foreign manufacture. The above two statements by Certain-teed sales representatives were both made substantially after the date of the instant Complaint and, consequently, have little or no relevancy as evidencing a conspiracy prior to the date of the Complaint. Even assuming the admissibility of these statements, nothing in either affidavit supports in any manner the charge that Certain-teed joined in a conspiracy or a concerted effort with

---

7. Even assuming a charge in the Complaint of a violation of § 1 of the Sherman Act through coercive resale price maintenance agreements, such coercion as was present in the Simpson case, supra, could not be substantiated by the facts in the instant record. On page 17, 84 S.Ct. 1051 of its opinion in the Simpson case, supra, the Supreme Court made clear that it is the coercion that a supplier uses on its retail outlets to achieve resale price maintenance that is objectionable. The instant agreement is not coercive as it provides that Mr. Askew's company may purchase from Certain-teed for shipment to its own warehouse "such quantity of Certain-teed asbestos-cement pipe * * * as [the company] may specify. * * * and such purchases shall be the property of [the company] to do with

as it sees fit free of any control by Certain-teed." In Simpson, the retail gasoline station dealer was dependent on the supplying oil company for all of his products and was required to sell them at a set price. In the instant case, according to Mr. Askew, the retail dealer sells products of other companies which are related to Certain-teed's pipe at prices which are not controlled by the supplier. Thus, the instant retail dealer is not dependent on Certain-teed for all its products and, of those products supplied by Certain-teed, only that sold by the dealer on a basis of direct shipment from Certain-teed's factory has its price set by Certain-teed. The control over the actions of the retail dealers in Simpson is not present on the instant record.

J-M of K & M to restrict specifications. The last affidavit which the Government has submitted in an effort to support their charge is that of Mr. Feskoe (Document 63), which states that ASTM specifications has discriminated against foreign asbestos-cement pipe since June 1, 1962. Assuming the truth of this, once again no plausible inference of a conspiracy which includes Certain-teed may be drawn from this fact. The Government's evidence, even if admissible, is not sufficient to justify the inference that Certain-teed entered into any type of an agreement with either J-M or K & M to restrain and eliminate the sale and use of foreign-made asbestos-cement pipe through restrictive ASTM specifications or in any other way. As stated in the Pennington case, supra, 85 S.Ct. at p. 1593, "Noerr shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose."

The last issue of fact which the Government contends is present on the record is that a relevant market exists for purposes of proving the Government's allegations in the Complaint under § 2 of the Sherman Act, 15 U.S.C. § 2, that there was a conspiracy and/or attempt to monopolize this asbestos-cement pipe market.[8] The Government has filed six affidavits (Documents 53–58) from purchasers and users of pipe, which affidavits state that they use asbestos-cement pipe and five of which affidavits state that they would not switch to other types of pipe if minor variations in the price of asbestos-cement pipe occurred. Once again assuming[9] that these affidavits prove the Government's contention that a relevant market exists in the commodity in question, no inference connecting Certain-teed with any conspiracy, or attempt, to monopolize this relevant market can be inferred from the establishment of this fact.

Taking the record as a whole and viewing it in the light most favorable to the party opposing the motion for summary judgment, the Government has been unable to point to any evidence from which even an inference that Certain-teed joined a pre-existing conspiracy can be drawn. No inference can be drawn that Certain-teed joined into any pre-existing conspiracy with K & M and/or J-M merely because it now occupies the place in the asbestos-cement pipe industry that was formerly held by K & M. In order for an injunction to be issued against Certain-teed under § 4 of the Sherman Act, 15 U.S.C. § 4, a finding that it, rather than its predecessor, has participated in a course of conduct which is illegal under the Sherman Act is a necessary predicate. United States v. Griffith Amusement Co., 94 F.Supp. 747 (W.D. Okla.1950).[10] The fact that Certain-teed admits that it was aware that K & M was under investigation for antitrust violations at the time that it purchased the asbestos-cement pipe business is not grounds for an inference that Certain-teed joined an illegal conspiracy. In fact, if any inference is to be drawn from

---

8. See United States v. Johns-Manville Corporation, 231 F.Supp. 690, 698 (E.D.Pa. 1964), for discussion of the finding in the companion criminal case that the Government had failed to establish the existence beyond a reasonable doubt of a relevant market in the trade or commerce of asbestos-cement pipe and couplings.

9. The undersigned does not believe that these affidavits change significantly the record as a whole or justify any change in the statements of the undersigned in April 1964, as reported at 231 F.Supp. 699–700. If plaintiff is alleging a violation of the Sherman Act confined to a part of Texas or any other area, rather than the interstate and foreign commerce alleged in the Complaint, a more limited action should be filed.

10. A "successor" corporation is not automatically presumed to carry on illegal activities of its predecessor. Further, it has consistently been held by the Federal Courts that a successor corporation is not bound by a decree against its predecessor if all that has been shown is that the successor took the place of the predecessor in the industry. See, for example, United Pharmacal Corporation v. United States, 306 F.2d 515 (1st Cir. 1962), and other cases cited at pp. 22–26 of the defendant's brief (Document 71).

this fact, it would seem to be one to the contrary.

Poller v. Columbia Broadcasting, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), and other cases with holdings similar to this, relied on by the Government for the premise that summary judgment is not appropriate for disposing of antitrust litigation where intent and motive play leading roles, are distinguishable from the instant case where there has been a companion criminal trial lasting over four months which the Government conceded would give Certain-teed "the benefit of a complete presentation of the Government's evidence, theory of the case and legal arguments with respect thereto * * *." (Pre-Criminal Trial Affidavit of Raymond K. Carson, Document 19). The case at bar is further distinguishable on its facts from the Poller case as Certain-teed only had from June 1, 1962, when it entered the asbestos-cement pipe business, until July 25, 1962, when the Complaint was filed, to participate in the conspiracy alleged in the Complaint. No evidence has been presented by affidavit or otherwise which even remotely infers such a joinder or participation during this short period of time.

Looking at the record in this case in the light most favorable to the plaintiff, as must be done, it shows no genuine dispute as to a material fact. Defendant's Motion for Summary Judgment will be granted.

The able briefs of counsel have been filed as Documents 71 to 73.

### APPENDIX A

### RULINGS ON MOTIONS TO STRIKE AFFIDAVITS AND PORTIONS THEREOF AND ON OBJECTIONS TO PARTS OF THE RECORD

The Government's first motion to strike (Document 49) is directed to the affidavit of James R. Reichel (attached to Document 34). The Government's motion to strike Mr. Reichel's statement in paragraph 3 that he "would have proved" his innocence if he had been tried in the companion criminal case, Criminal No. 21118, is granted, as the statement is speculative and not made from personal knowledge. The Government's motion to strike the statement of Mr. Reichel in paragraph 9 that no collusive or rigged bids were submitted by Certain-teed for supplying asbestos-cement pipe to Government agencies or other customers will be denied, as Mr. Reichel was in charge of the asbestos-cement pipe sales for Certain-teed from June 1, 1962, until the date of the instant Complaint, July 25, 1962 (see par. 1 of his affidavit) and, as such, would be qualified to make the above statement. The affiant's statement that all such bids which were prepared and submitted under his supervision were independently arrived at is of very little weight, as no copies or examples of such bids were attached to his affidavit and there is no information on what bids were prepared under his supervision. The Government's motion to strike Mr. Reichel's statement in paragraph 10 that specifications for asbestos-cement pipe adopted by the American Society for Testing Materials (hereinafter called "ASTM"), American Water Works Association (hereinafter called "AWWA"), municipalities, and awarding authorities "were and are based upon the best judgment of said agencies" will be granted, as there is no showing that this affiant is competent to testify from his personal knowledge as to the accuracy of such a statement. However, the statement of Mr. Reichel that Certain-teed has never proposed or advanced to any of said agencies specifications for the purpose of restricting or eliminating competition from foreign-made asbestos-cement pipe will be considered and the Government's motion to strike it will be denied, as Mr. Reichel was a member of ASTM and AWWA, as well as being in charge of Certain-teed's asbestos-cement pipe sales from the date of Certain-teed's acquisition of K & M's assets until the filing of the instant Complaint.

The Government's next motion to strike (Document 50) is directed to the affidavit of Malcolm Meyer (at-

tached to Document 34). The motion to strike the affiant's statement in paragraph 7 that a directive was issued to Certain-teed personnel involved with the sale of asbestos-cement pipe to conduct the sale of such pipe on an independent basis and in compliance with the antitrust laws on the ground that such directive was not attached to the affidavit will be denied, as a sworn and certified copy of this directive was filed (Document 68) at oral argument along with the affidavit of Arthur Graves, who issued the directive.[a] The filing of these documents was not objected to by the Government (p. 45, Document 64). The motion to strike the statement that all personnel of Certain-teed have followed the instructions contained in this directive will be denied, as Mr. Meyer, as President of Certain-teed, is qualified to make such a statement. Of course, this statement is as far as Mr. Meyer knows, and he cannot know what all such personnel do at all times. However, the statement that Certain-teed's sale of cement pipe has been "in full compliance with the antitrust laws" (paragraph 7) and "the sales and other procedures were and are in compliance with the antitrust laws" will be rejected, as these are legal conclusions and not statements of fact. The words "or otherwise" will be deleted from paragraph 10 of this affidavit. However, this does not nullify Mr. Meyer's statement in the same paragraph to the effect that Certain-teed did not knowingly join in (a) any offense alleged in the Complaint but acted independently and without knowledge of any conspiracy in restraint of trade, or (b) any plan or attempt to monopolize the industry, as this is a statement which Mr. Meyer, as President of Certain-teed and as the person who actively took part in the sale, could make as being within his own personal knowledge. The Government's

motion to strike the affiant's denial in paragraph 11 that Certain-teed "has engaged in or acted in furtherance of any of the offenses charged in the Complaint * * *" will be granted, as such a statement is a legal conclusion. Affiant's statement in paragraph 13 that the exchange of Certain-teed stock for K & M assets did not give K & M or Turner and Newall (K & M's parent) control of Certain-teed, de facto or otherwise, will be stricken as a statement of fact but accepted as a statement of opinion of a person (President of the corporation for almost ten years) qualified to state such an opinion.[b] The statements of Mr. Meyer concerning when Certain-teed was incorporated and its listing on various exchanges and the various fields it has operated in will not be stricken, as they relate to the history of the company which should be within the knowledge of its President. His statement that Certain-teed has operated in the best interests of Certain-teed and not in the interests of K & M and T & N must be accepted also, on the grounds that a President of a corporation should be qualified to testify to the policy that his corporation has maintained.

■ The last motion of the Government to strike (Document 51) is directed to the affidavit of M. S. Davis (attached to Document 34), who has been General Manager of Certain-teed's Pipe Division since May 1, 1963. The affiant's general denial that, since he has been Division General Manager, "Certain-teed * * * has engaged in or knowingly acted in furtherance of any of the offenses charged in the complaint" will be modified by striking the words "engaged in or," as this is a legal conclusion. However, this does not affect his statement that Certain-teed has operated independently in exercise of its own business judgment, to the best of Mr. Davis'

---

**a.** The Government did not object to Certain-teed's filing of the above affidavit and directive at the oral argument (pp. 44 and 45, Document 64).

**b.** The fact finder takes into consideration the interest of the President of the defendant in making such a statement, particularly in the absence of being able to evaluate from personal observation his possible, extremely careful and conscientious qualities as a witness.

ability as the General Manager of its Pipe Division. The only problem which arises as to the acceptability of any of Mr. Davis' statements for purposes of the instant record is their relevance to the period in issue, i. e., the period from the date of the acquisition of the assets of K & M until the issuance of the Complaint. Since the Complaint was issued in July of 1962 and Mr. Davis did not become General Manager until May of 1963, his statements are only acceptable for purposes of drawing an inference of previous conduct from that later conduct sworn to in his affidavit.

The Government, at oral argument on the instant motion, moved orally (p. 49, Document 64) to strike the statement of Mr. McCaskill contained in paragraph 7 of his affidavit (which is attached to Document 34). Mr. McCaskill was General Sales Manager of Bestwall Certain-teed Sales Corporation. Shortly after the purchase of K & M's assets, the responsibility for the sale of asbestos-cement pipe was placed under his supervision as General Sales Manager. In paragraph 7, the affiant denies that in the period from June 1, 1962, to May 1, 1963, any of the personnel under his supervision "engaged in or acted in furtherance of any of the offenses charged in the complaint." The Government's motion to strike will again be granted as this is broad, conclusionary legal language.[c]

Counsel for Certain-teed sought to supplement the instant record by the introduction at oral argument of two more affidavits, which were those of Clyde R. Hutchcroft, Research Manager of Certain-teed (Document 70), and Charles R. Meek, Director of Research, Development, and Quality Control of Certain-teed (Document 69). Before ruling on these affidavits, it will be necessary to discuss some of the background leading up to the filing of these affidavits.

As stated above, there was a companion criminal case, which was initiated on June 1, 1962, by the indictment of all of the defendants in the instant case except for Certain-teed, for purported violations of the Sherman Act. The indictment was based on substantially the same conduct alleged in this suit. See United States v. Johns-Manville Corporation, 213 F.Supp. 65 (E.D.Pa.1962). The two corporate defendants in the criminal case were found not guilty of violating § 1 of the Sherman Act by a jury on May 21, 1964, after a four-and-one-half month trial.[d] On September 11, 1964, defendant Certain-teed filed the instant motion for summary judgment, which was at or about the time that argument was heard on K & M's similar motion referred to at page 1 of the attached Memorandum Opinion. On December 29, 1964, the undersigned sent a memorandum to the Clerk of the District Court, requesting that Certain-teed's motion be listed on the next argument list, which was scheduled for February 26, 1965, and sent copies of this memorandum to all counsel, which memorandum contained a schedule for filing briefs for the argument. The schedule called for the moving party, Certain-teed, to have its brief filed no later than January 25, 1965, and for the Government to have its brief filed no later than February 23, 1965. On January 15, 1965, the Government filed notice (Document 44) that it would take the depositions of four officers of Certain-teed on January 26 and 27, among whom

c. The Government relies on the case of Engelhard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347 (9th Cir. 1963), for the proposition that the court is obliged to disregard affidavits containing hearsay and legal conclusions. The court in Engelhard stated that affidavits containing *only* hearsay and legal conclusions must be disregarded. Where, as in the instant case, affidavits contain material facts which are intermingled with conclusions of law, the court may disregard the conclusions of law and consider the rest of the affidavits. See 6 Moore's Federal Practice § 56.22, pp. 2328-9, and cases cited therein.

d. The court directed verdicts of acquittal on the § 2 counts at the close of the Government's evidence. See United States v. Johns-Manville Corporation, 231 F.Supp. 696 (E.D.Pa.1964).

were Messrs. Hutchcroft and Meek. On January 18, Certain-teed moved for a protective order under F.R.Civ.P. 30(b) (Document 45). On January 22, 1965, the Government filed another notice (Document 46) that they would take the depositions of two officers of Sanderson, Inc., of New York City, on February 11, 1965. A hearing was held on January 25, 1965 (Document 48) on the defendant's motion for a protective order at which relief was requested by the defendant from both notices of deposition filed by the Government, on the grounds that the notices of deposition were untimely and dilatory, that the depositions would harass Certain-teed, and that these depositions were unnecessary.

On January 27, 1965, the court filed a Memorandum and Order (Document 47, reported at 237 F.Supp. 893), which granted the defendant's motion and precluded the plaintiff from taking any further depositions until the argument scheduled for February 26, 1965. The basis of this order was that the court's permission was necessary before the record on a summary judgment motion could be supplemented by depositions (see F.R. Civ.P. 56(e)) and that to take depositions more than four months after a motion for summary judgment had been filed, and several weeks after notice had been sent to counsel that argument on the motion would be heard, would be very prejudicial to counsel for Certain-teed, whose brief was due before the taking of any of the depositions and had been prepared before the notices of the depositions were sent. The court held that the record upon which counsel for the defendant wrote its brief should not be changed subsequent to the filing of its brief under these circumstances. Since the court, by this order, prevented the plaintiff from deposing Messrs. Hutchcroft and Meek, it is not appropriate to permit their affidavits to be considered

when filed at the time of the oral argument,[e] unless the Government consents to such consideration. In view of the absence of any such consent (see pps. 45–48 of Document 64), for purposes of the instant motion they are now not being considered.

Certain other rulings concerning evidence considered in deciding the motion now before the court are contained in the foregoing Memorandum Opinion (see, for example, footnotes 2 & 5).

---

e.  In making this ruling the court has taken into consideration the fact that the defendant offered to let the Government depose these two people, but only as a part of a package deal to which the Government was not obligated to agree (see letters from counsel for both parties dated 1/27/65 and 2/2/65, which are attached to this opinion).