*948 OPINION.
Black.:
Tlie issues will be considered in the order previously stated.
Issue 1. — The principal issue is whether petitioners Fleming and Kimbell and their respective wives during the years 1934 and 1985, constructively received any of the oil payments reserved by those petitioners in 1931 when they assigned to the Fleming-Kimbell Cor-, poration the six leases mentioned in our findings of-fact, or whether-the corporation properly reported the income in question. The’ respondent has treated the income as belonging both to the corporation and also to the individuals, but now concedes that, if his determinations as to the individuals be sustained, the income which he proposes to tax to the individuals must, to the extent that it is also included in the corporation’s income fo.r the fiscal year ended April 30, 1935, be excluded therefrom.
The facts regarding this issue are fully set- out in pur findings. The issue turns on the recognition to be given- the second oral agreement entered into late in 1933 whereby the time when Fleming and Kimbell were to share in the oil produced from the six leases assigned to the corporation in 1931 was extended from January 1,' 1934, to September 16, "1936. It is only by giving'recognition to the first oral agreement entered into at the tune the leases were assigned tó the corporation that the respondent has any semblance of reason, for his determination that the individuals constructively received the income in question. If the parties had a right to make the first oral'agreement, they had a right to make the second, and our only concern is whether these agreements actually exist£d„andjwere’ inv' ■f-H^ild^~aFTeairgeiinine, bona fide"agreements between the parties, "jj TEe'"a"greéments-afé^ñppbrted by uncontradicted testimony of rep's utable and credible witnesses. This testimony is borne out by.the | conduct of the parties and is verified by written instruments sub- | sequently executed which appear to be in all respects regular and trustworthy. Upon such a record, we know of no reason why from a tax standpoint full legal effect should not he -accorded the second' oral” agreement referred to above, which was entered into prior to ■ the date that any of the oil payments"ili' 'question were to' begin. Under that agreement Fleming and Kimbell were not -entitled to. receive-any of the production which was-to apply against their reserved interests until September 16, 1936. Until that time all of the production belonged to the Fleming-Kimbell Corporation,, and we think it was correctly reported as income by that corporation. It may be proper also to say at this point that the evidence shows that both Kimbell and Fleming sold or exchanged their $114,250 oil payments in years later than 1935. Fleming’s exchange of $59,000 of his oil payment in 1936 is the subject of issue 4, later to be dis *949 'cussed herein. The $15,000 extra oil payment which each was to receive as consideration for the extension of the time of payment was received by each in years later than the taxable years we have before us, and each reported that amount in his income tax return for taxation. It follows that the respondent was in error in determining that petitioners Fleming and Kimbell and their respective wives were in constructive receipt of income during 1934 and 1935 ■ by virtue of the reservations of oil made at the time the six leases were assigned to the corporation in 1931. Cf. George P. Douglas, 1 B. T. A. 372. No change, therefore, will be made in the income reported by the corporation and approved by ■ the respondent for the'fiscal year in question. - -
In support of his determination, the respondent in his brief cites Herbert v. Commissioner, 81 Fed. (2d) 912; Hamilton National Bank of Chattanooga, Administrator, 29 B. T. A. 63; Corliss v. Bowers, 281 U. S. 376; John A. Brander, 3 B. T. A. 231; Helvering v. Gordon, 87 Fed. (2d) 663; Security First National Bank of Los Angeles et al., Executors, 28 B. T. A. 289, 316; Brooks v. Commissioner, 35 Fed. (2d) 178; American Trust Co., 21 B. T. A. 30; and Isadore Schuman, 20 B. T. A. 1167. These cases could be in point only if no recognition were given to the second oral' agreement. For reasons already given we think the question at issue is controlled by the second oral agreement, which we hold to be entirely valid, and on this issue we decide against the respondent.
Issue B. — The second issue is whether the respondent erroneously limited a loss sustained by petitioner Fleming and his wife in 1934 through the sale of a business property formerly occupied by them as their residence. In 1921 petitioners constructed a residence at a cost in excess of $50,000. On June 1, 1930, they converted it into rental property, at which time it had a fair market value of $35,000. Petitioners sold the property in 1934 for $10;000. ~ The depreciation .sustained between June 1, 1930, and the date of sale in 1934 was $2,450. ’ The respondent determined that the “los? recognized,” as that term-is used in section 117 (a) of the Revenue Act of 1934,[2] was *950 the amount of $22,550; that petitioners had held the property for more than ten years; and that under section 117 (a) only 30 per centum of the loss recognized could be taken into account in computing net income.
At the outset petitioners concede that under Heiner v. Tindle, 276 U. S. 582, the loss to be taken into, account could in no event exceed $22,550, which is the difference between the fair market value of the property when rented on June 1, 1930, less depreciation; and the selling price. They contend, however, that the respondent erred in using the amount of $22,550 as the “loss recognized upon the sale” as the word “recognized” is used in section 117 (a). Petitioners contend that the word “recognized” refers back to section 112 (a) which provides that “Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except [for certain provisions not herein applicable]”; that the entire amount of loss determined under section 111 is the difference between the original cost of $50,000, less depreciation (no proof of which is in the record), and the selling price; that the result thus obtained is the “loss recognized” to be used in applying the percentages provided in section 117 (a), which under this contention petitioners concede would be 30 percent; and that the result thus obtained would then be limited to the maximum amount of $22,550 computed under Heiner v. Tindle, supra.
We see no merit in this contention. It is our opinion that in the case of residential property which has been converted into business property and later sold at a loss, both the “loss recognized” under section 117 (a), and the loss “determined under section 111” must be ascertained by applying the principles enunciated in Heiner v. Tindle, supra, and that in the instant case the loss so “recognized” to be taken into account in computing net income at the percentages mentioned is the above amount of $22,550.
As an alternative, petitioners contend that the period of holding should commence from J une 1, 1930,’ so as to bring the percentage limitation within the 60 percent bracket instead of the 30 percent bracket. We think that under the plain provisions of section 117- (b) the property in question had been “held” by petitioners since 1921, which was more than ten years prior to the sale thereof in 1934. In making his determination in this respect the Commissioner has followed his I. T. 3041, reported in C. B. 1937-1, p. 148. We think this determination is correct.
The respondent’s determinations in Docket Nos. 92957 and 92958, in so far as they relate to the second issue, are sustained. Cf. Paul and Mertens. vol. 2. sec. 19.16.
*951 Issue 3. — The respondent must he sustained as to this issue upon the authority of Helvering v. Wilshire Oil Co., 308 U. S. 90, and F. H. E. Oil Co. v. Helvering, 308 U. S. 104.
Issue If. — Richter Exchange. — The assignment of error as to this issue in Docket Nos. 94689 and 94690, as far as it relates to the Richter exchange, is the same, namely: “Respondent erroneously determined that Petitioner and wife [husband in Docket No. 94690] received taxable income in the year 1936 in the sum of $858.46, by reason of an exchange of an interest in an oil and gas lease for an oil payment.” The facts are set out in our findings and need not be repeated.
Petitioners contend that the exchange of their working interest (except for a reservation of one-fourth of seven-eighths of produc-' tion until oil of the value of $4,000 was received) in the Richter “A” lease, together with all the leasehold equipment and personal property located thereon, for two certain oil payments of $6,500 and $8,500 to be derived from oil when, as, and if produced from the Richter “B” and “C” leases, respectively, constituted a nontaxable exchange under section 112 (b) (1) of the Revenue Act of 1936. This contention must be decided against petitioners, upon the authority of Midfield Oil Co., 39. B. T. A. 1154. All that we said in that case is substantially applicable here. Petitioners, however, further contend that:
There is an additional reason why taxable gain cannot be recognized from the Richter transaction. Mr. Fleming received a contingent oil payment depending entirely upon production of oil and cannot be required to treat the receipt of such an interest in property as taxable gain under Rocky Mountain Development Company v. Commissioner, 38 B. T. A. 1303. Instead, he is entitled to apply all of his receipts from the oil payment to liquidate the cost of the property exchanged and is required to report only the excess when received as income.
The respondent objects to this further contention upon the ground that it is untimely, untenable, not raised by the pleadings and is presented for the first time in petitioners’ brief.
We think petitioners’ additional contention is within the assignment of error, and should be sustained. In Edwards Drilling Co., 35 B. T. A. 341; affd., 95 Fed. (2d) 719, we said: “The fact that the rights had a fair market value does not of itself require that the amount thereof be accrued as taxable income.” In the instant proceedings, the respondent not only attempts to tax petitioners on what he terms as the value of the two oil payments to be received from the Richter “B” and “C” leases, when, as, and if produced, but also attempts to tax petitioners on the value, of what they reserved in the Richter “A” lease, We think this constitutes error on the part of the respondent. Columbia Oil & Gas Co., 41 B. T. A. 38, 46. We decide this issue, in so far as it relates to the Richter *952 exchange, for the petitioners. There will be no taxable income from this exchange to petitioners until they .have recovered from the contingent oil payments, the cost basis of the property which they gave in exchange for the contingent oil payments. Cf. Rocky Mountain Development Co., supra.
. Gomo Exchange. — Very little need be said regarding this transaction. It should be noted, however, that petitioners in this trails-action received in exchange for- contingent oil payments an outright-working interest in the Como lease. There was nothing contingent about this working interest which they received. In that respect it is unlike the contingent oil payments which petitioners received: in the Richter exchange discussed above. Petitioners likewise contend that this exchange is nontaxable under: section 112 (b) (1) of the Revenue Act of 1936. They concede that Midfield Oil Co., supra, is-adverse to such a contention but argue that 'the decision in that case is not warranted by the legislative history of the act. We will abide by our former decision. We hold, therefore, that the Como exchange was a taxable exchange, and, since petitioners have- offered no evidence to show that the respondent erred in - commuting the taxable profit of $22,532.29 as set. out in- our findings, 'we- affirm the respondent’s determination on this point. .’■■■■
The deficiencies should be redetermined in accordance with this ieport.

Decisions will he entered under Rule 50.

 SE.C- 117. CAPITAL GAINS AND LOSSES.
(a) General Rule. — In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income;
100 per centum if the capital asset has been held for not more than 1. year;
80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years ; •
60 per centum if the capital asset has been held for more than 2 years "but not for . .more than" 5 years ;
40 per centum if the capital asset has been held for more than 5 years but not for for more than 10 years;
30 per centum if the capital asset has been held for more than 10 years.
(b) Definition of Capital Assets. — Eor the purposes of this title, “capital assets” means property held by the taxpayer (whether or not connected with his trade or business) * * *.