T.C. Memo. 1997-171


UNITED STATES TAX COURT


SAINTE CLAIRE CORPORATION, JAMES F. BOCCARDO, TAX MATTERS PERSON,
    Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

SAINTE CLAIRE CORPORATION, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos.  5921-95, 5922-95.[1]     Filed April 7, 1997.


Clarence J. Ferrari, Jr. and Lisa I. Caputo, for

petitioners.

Lavonne D. Lawson, for respondent.

_____

[1]     These cases were consolidated for purposes of trial,
briefing, and opinion and will hereinafter be referred to as the
instant case.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  By Notices of Final S Corporation Administrative Adjustment, respondent determined adjustments to the income of Sainte Claire Corporation (Sainte Claire), an S corporation, for the taxable years ended December 31, 1987 and 1988.  Respondent also determined deficiencies in Sainte Claire's 1987 and 1988 Federal income tax in the amounts of $23,106 and $717,998, respectively.[2]  Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues remaining to be decided in the instant case are (1) whether, during 1988, Sainte Claire constructively received the principal amount of a promissory note that it had been given in connection with the sale of certain property or (2) whether St. Claire disposed of the note, which was an installment obligation, within the meaning of section 453B.[3]

---

[2]  Although Sainte Claire elected to be an S corporation for its 1987 and 1988 taxable years, respondent determined that it was liable for tax on its excess net passive income pursuant to sec. 1375 for 1987 and on its net capital gain pursuant to sec. 1374 for 1988.

[3]  Petitioners object on grounds of relevance to entries in an exhibit prepared by respondent's agent that relate to payments of interest by James F. Boccardo to Sainte Claire during 1985 and 1986.  While we sustain petitioners' objection, consideration of those entries would not have altered our decision herein.

## FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

At the time the petitions in the instant case were filed, the principal place of business of Sainte Claire was located in San Jose, California. During the years in issue, Sainte Claire used the cash receipts and disbursements method of accounting.

Sainte Claire was organized pursuant to California law on March 1, 1946, and elected to be an S corporation on December 29, 1986, pursuant to the recommendation of its tax counsel. The corporation's first acquisition was a hotel, and it subsequently acquired other real estate, including ranches and mobile home parks. Its initial shareholders consisted of James F. Boccardo (Mr. Boccardo) and three of his friends and clients, Joseph Perrucci, Frank DiNapoli, and Earl Heple, each of whom held one quarter of its stock. Mr. Heple was killed in a construction accident during the 1950's, Frank DiNapoli died during 1974, and Mr. Perrucci died during 1985. Mr. Heple's interest in Sainte Claire came to be held by Mr. Boccardo's family; the interests in Sainte Claire that had originally been held by Frank DiNapoli and Mr. Perrucci became dispersed among, inter alia, members of their families. At least during 1988, the stock of Sainte Claire was held by the following individuals, members of families, and a trust, in the percentages indicated:

| | |
|---|---|
| James F. and Lorraine V. Boccardo[1] | 31.25 |
| John H. Boccardo, III | 9.375 |
| Leanne C. Boccardo Rees | 9.375 |
| Patricia Perrucci Melehan | 6.25 |
| JoAnn Perrucci O'Connell | 6.25 |
| Angelina Perrucci | 6.25 |
| James S. Vaudagna | 6.25 |
| DiNapoli Family (7 shareholders) | 16.145832 |
| FL & EE DiNapoli Trust | 7.791668 |
| Mulcahy Family (5 shareholders) | 1.5625 |

[1] Lorraine V. Boccardo was Mr. Boccardo's wife.

Mr. Boccardo was one of the original directors of Sainte Claire, and he continued to hold that office subsequently. During the 1960's, Mr. Boccardo, Frank DiNapoli, and Mr. Perrucci managed Sainte Claire's affairs. After Frank DiNapoli's death during 1974, his son, J. Philip DiNapoli (Mr. DiNapoli), became a director of Sainte Claire. After Mr. Perrucci's death during 1985, JoAnn Perrucci O'Connell became a director of Sainte Claire. From 1985 and during all subsequent times relevant to the instant case, the directors of Sainte Claire consisted of Mr. Boccardo, Mr. DiNapoli, and Ms. O'Connell.

From the founding of Sainte Claire, and during all times relevant to the instant case, Mr. Boccardo was its president. Mr. DiNapoli became its secretary after Mr. Perrucci's death and continued to hold that office during all subsequent times relevant to the instant case. Ms. O'Connell was its assistant secretary from 1985 through at least 1995. During relevant times after 1985, Mr. Boccardo would make day-to-day decisions concerning Sainte Claire's affairs but would consult the other

board members on decisions of consequence. Sainte Claire's board held periodic meetings, certain of which other shareholders would attend.

During 1968, Mr. Boccardo purchased two prune ranches, known as the Arboga and Gridley ranches, from Sainte Claire. Mr. Boccardo assumed the existing mortgages on the ranches and gave Sainte Claire a promissory note (1968 note) dated November 1, 1968, in the amount of $2,087,500 that bore interest at the rate of 6-½ percent per annum, payable semiannually, and that provided for a balloon payment of the principal on or before November 1, 1988. Although the 1968 note stated that it was secured by deed of trust, it was actually unsecured. Mr. Boccardo sold the Gridley ranch during 1975. He sold the Arboga ranch during October 1988 for $5,150,000.

Prior to the time that the 1968 note became due, Mr. Boccardo discussed the possibility of extending it with Mr. DiNapoli, Ms. O'Connell, and others. Mr. Boccardo requested the extension because commitments made by him in connection with his real estate investments had left him short of cash, and he would have been obliged to borrow in order to pay the 1968 note. At the time that the 1968 note was due, Mr. Boccardo, a successful attorney and real estate investor, was worth approximately $50 million and had a substantial income. Mr. Boccardo would have paid the 1968 note had Sainte Claire requested it.

On November 1, 1988, the date the 1968 note matured, a meeting of Sainte Claire's board was held, which was also attended by other shareholders, at which Mr. Boccardo requested that the 1968 note be extended. In consideration of the extension, Mr. Boccardo offered to pay interest on the principal amount at the rate of 9 percent per annum. Mr. Boccardo considered that rate to be more than the rate that Sainte Claire would have received on another investment, such as a certificate of deposit. He also preferred to deal with, and pay interest to, Sainte Claire, a corporation that he partially owned, rather than a third party, such as a bank. Mr. DiNapoli, who had experience in banking, recommended acceptance of Mr. Boccardo's proposal because he considered the interest rate offered to be advantageous to Sainte Claire and Mr. Boccardo to be creditworthy. After discussion by the board and shareholders present, the board unanimously voted to accept Mr. Boccardo's proposal, and that action was reflected in the minutes of the meeting as follows:

> WHEREAS, The Promissory Note dated November 1, 1968 in the sum of $2,087,500 executed by James F. Boccardo, has matured, the following Resolution was unanimously adopted:

> BE IT RESOLVED, that this Corporation shall renew the Promissory Note in the sum of $2,087,500 to April 1, 1990, at an interest rate of Nine (9) Percent, said note to be executed by James F. Boccardo.

Mr. Boccardo executed an unsecured promissory note (1988 note) dated November 1, 1988, in the amount of $2,087,500 that bore interest at the rate of 9 percent per annum, payable semi-annually, and that provided for a balloon payment of the principal on or before April 1, 1990. Sainte Claire's board met on April 1, 1990, and voted to renew the 1988 note for 1 year. Mr. Boccardo executed a promissory note (1990 note) dated April 1, 1990, that was due on or before April 1, 1991, but that otherwise was made on the same terms as the 1988 note. On April 1, 1991, Sainte Claire's board met and voted to extend the due date of Mr. Boccardo's note to April 1, 1994. Mr. Boccardo executed a promissory note (1991 note) dated April 1, 1991, that was due on or before April 1, 1994, but that otherwise was made on the same terms as the 1990 note.

During 1993, Mr. Boccardo paid Sainte Claire $2,159,562.20, representing payment of the principal of the 1991 note in the amount of $2,087,000[4] and interest in the amount of $72,562.20. Also during that year, Sainte Claire distributed the principal payment of $2,087,000 to its shareholders. Sainte Claire reported gain on the sale of the Arboga and Gridley ranches in

---

[4]    The parties do not attempt to explain the $500 discrepancy between the principal amount of the 1991 note, which was $2,087,500, and the amount of principal paid by Mr. Boccardo, which was $2,087,000. The parties, however, stipulated that Mr. Boccardo paid the principal amount owed Sainte Claire during 1993.

the amount of $2,087,500 on its 1993 S corporation income tax return.

## OPINION

In the instant case, we must decide whether, during 1988, Sainte Claire constructively received the principal amount of the 1968 note or, alternatively, whether St. Claire disposed of that installment obligation within the meaning of section 453B. If we conclude that either of those events occurred, Sainte Claire would be required to recognize in its 1988 taxable year the gain realized on the sale of the Arboga and Gridley ranches, $2,087,500, which was also the principal amount of the 1968 note. Petitioners do not dispute that, in the event gain from the sale of the ranches must be recognized in Sainte Claire's 1988 taxable year, the provisions of section 1374, as applicable to Sainte Claire, are met with respect to that gain and that tax on that gain would be payable by Sainte Claire.[5]

---

[5] Because Sainte Claire made its election to be an S corporation on Dec. 29, 1986, it is, in general, subject to taxation on its net capital gain pursuant to the provisions of sec. 1374 as it existed prior to the amendments made by sec. 632 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2275-2277. Tax Reform Act of 1986, Pub. L. 99-514, sec. 633(b), 100 Stat. 2277 (providing for effective date of change). Sec. 1374(a), prior to amendment, provided that, if for a taxable year of an S corporation, its net capital gain exceeded $25,000 and 50 percent of its taxable income, and the S corporation's taxable income for the year exceeded $25,000, a tax was imposed on the income of the corporation. Pursuant to sec. 1374(c)(1), prior to amendment, the tax was not imposed for an S corporation's taxable year where its election to be treated as an S corporation had been in effect for the 3 immediately preceding taxable years.

(continued...)

The first issue we consider is whether, during 1988, Sainte Claire constructively received the principal of the 1968 note.[6] Section 451(a) provides that any item of gross income received by a taxpayer is to be included in the gross income for the taxable year in which received, unless the item is to be properly accounted for during a different period pursuant to the taxpayer's method of accounting. Section 1.451-1(a), Income Tax Regs., provides that taxpayers using the cash receipts and disbursements method of accounting, which Sainte Claire did during relevant times, shall include in gross income amounts when actually or constructively received. Section 1.451-2(a), Income Tax Regs., describes the doctrine of constructive receipt as follows:

> Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he

---

[5] (...continued)
Sec. 1.1374-1A(c)(1)(i)(A), Income Tax Regs. See generally Warrensburg Bd. & Paper Corp. v. Commissioner, 77 T.C. 1107 (1981). The exception provided by former sec. 1374(c)(1) does not apply to Sainte Claire.

[6] In briefing this issue, both parties discuss Vaughn v. Commissioner, 81 T.C. 893 (1983), modified 87 T.C. 164 (1986); however, neither party notes that this Court subsequently reconsidered its holding that the taxpayer had constructively received the proceeds of an installment sale. Vaughn v. Commissioner, 87 T.C. 164, 167 (1986), modifying 81 T.C. 893 (1983). In reconsidering that holding, this Court also stated that the discussion of constructive receipt in the earlier opinion should be disregarded. Id. at 168 n.2. Accordingly, we do not consider the opinion cited to us by the parties.

> may have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

Although the doctrine is sparingly applied, a taxpayer will be found to be in constructive receipt of income where the taxpayer had an unrestricted right to receive the income, the taxpayer was able to collect it, and the failure to receive it resulted from the exercise of the taxpayer's own choice. Murphy v. United States, 992 F.2d 929, 931 (9th Cir. 1993); Bennett v. United States, 293 F.2d 323, 326 (9th Cir. 1961); Childs v. Commissioner, 103 T.C. 634, 654 (1994), affd. without published opinion 89 F.3d 856 (11th Cir. 1996); Gullett v. Commissioner, 31 B.T.A. 1067, 1069 (1935). But see Pittsburgh-Des Moines Steel Co. v. United States, 360 F. Supp. 597, 600 (W.D. Pa. 1973). The doctrine prevents a taxpayer from turning its back on income otherwise available. Hamilton Natl. Bank v. Commissioner, 29 B.T.A. 63, 67 (1933). The question whether a taxpayer has constructively received income is one of fact. Avery v. Commissioner, 292 U.S. 210, 215 (1934); Bennett v. United States, supra at 326; Martin v. Commissioner, 96 T.C. 814, 822 (1991).

In the instant case, the evidence shows that, at the time Sainte Claire's board voted on November 1, 1988, to renew the 1968 note, it had matured, and Sainte Claire had an unqualified right to receive the principal amount. The parties stipulated that the 1968 note "became due on November 1, 1988, on which date

Sainte Claire's board of directors met and extended payment of the principal thereon".  Moreover, the resolution reflecting the board's action stated that the 1968 note "has matured".

While Mr. Boccardo discussed extending his note with members of Sainte Claire's board and others prior to the due date of the note, we are not persuaded by the record in the instant case that an agreement or understanding that the note would be extended existed prior to the vote of the board on November 1, 1988. Accordingly, the cases holding that a taxpayer may effectively defer for tax purposes receipt of income payable pursuant to an agreement by entering into a superseding agreement prior to the time the income is due pursuant to the terms of the original agreement, see, e.g., Martin v. Commissioner, supra at 823-824; Oates v. Commissioner, 18 T.C. 570, 584-585 (1952), affd. 207 F.2d 711 (7th Cir. 1953); Veit v. Commissioner, 8 T.C. 809, 817-819 (1947); Kimbell v. Commissioner, 41 B.T.A. 940, 948-949 (1940), are not controlling in the instant case because the agreement to defer payment was not made until Sainte Claire's right to the income became vested.

The second factor to be considered is whether Sainte Claire was able to collect the principal amount of the 1968 note from Mr. Boccardo at the time it became due.  Petitioners, in arguing that Sainte Claire did not constructively receive the 1968 note principal, stress that no funds of Mr. Boccardo's were transferred to, set aside for, or otherwise made available to

Sainte Claire during 1988. We note that the existence of an entry crediting the note principal to Sainte Claire on Mr. Boccardo's books is not required for a finding of constructive receipt.[7] <u>Cooney v. Commissioner</u>, 18 T.C. 883, 885-887 (1952); <u>Hooper v. Commissioner</u>, T.C. Memo. 1995-108. Moreover, at the time that the note was due, Mr. Boccardo, a successful attorney and real estate investor, was worth over $50 million and had a substantial income. Although, because of commitments connected with his real estate investments, he did not have sufficient cash on hand to pay the note, he admitted that he could have borrowed the funds to do so.

An obligor's lack of ready cash does not prevent constructive receipt of an amount due a taxpayer where the obligor has the ability to borrow the funds necessary for payment. <u>A.D. Saenger, Inc. v. Commissioner</u>, 84 F.2d 23, 25 (5th Cir. 1936), affg. 33 B.T.A. 135 (1935); <u>Hyplains Dressed Beef, Inc. v. Commissioner</u>, 56 T.C. 119, 127 (1971); <u>Ohio Battery & Ignition Co. v. Commissioner</u>, 5 T.C. 283, 287-288 (1945). Despite his other commitments, Mr. Boccardo could and would have paid the note had Sainte Claire requested him to do so.[8] <u>Rhombar</u>

---

[7] Mr. Boccardo apparently used the cash method of accounting.

[8] Although his commitments may have made it inconvenient to do so, Mr. Boccardo was willing to pay Sainte Claire. For instance, at one point in his testimony, while discussing the advantages to Sainte Claire of having him as its debtor, Mr. Boccardo stated:
(continued...)

Co. v. Commissioner, 47 T.C. 75, 85-86 (1966) affd. on another ground 306 F.2d 516 (2d Cir. 1967), which is relied on by petitioners, is distinguishable because the debtor in that case was in a "stringent cash position" and apparently was unable to pay its obligations, precluding application of the doctrine.

Although Sainte Claire had the right to receive payment on the 1968 note and was able to collect the note principal from Mr. Boccardo, it did not actually receive payment because its board decided to renew the note to April 1, 1990. Sainte Claire's voluntary choice not to receive payment is ineffective to prevent its constructive receipt of the principal amount of the note. Llewellyn v. Commissioner, 295 F.2d 649, 651 (7th Cir. 1961), affg. T.C. Memo. 1960-197; Williams v. United States, 219 F.2d 523, 527 (5th Cir. 1955); United States v. Pfister, 205 F.2d 538, 541 (8th Cir. 1953); Willits v. Commissioner, 50 T.C. 602, 613-619 (1968); Woodbury v. Commissioner, 49 T.C. 180, 196 (1967); Frank v. Commissioner, 22 T.C. 945 (1954), affd. per curiam 226 F.2d 600 (6th Cir. 1955); Deupree v. Commissioner, 1 T.C. 113,

---

[8] (...continued)

A.   They get nine percent instead of six or seven or five or four from a borrower [Mr. Boccardo] that they could call up any day and say, hey, would you do me a favor, would you pay that note tomorrow, we've got to do this, and I'd say sure.

Q.   Now--

A.   You're dealing with friends.

120 (1942); Lewis v. Commissioner, 30 B.T.A. 318, 324 (1934).

The rule is summarized in the following excerpt from Oliver v.

United States, 193 F. Supp. 930, 933 (E.D. Ark. 1961), which we

quoted with approval in Martin v. Commissioner, 96 T.C. at 823-

824:

> [Where a taxpayer] acquires an unconditioned vested
> right to receive the proceeds of the sale, and the
> buyer is ready, willing, and able to make payment, the
> taxpayer cannot avoid treating the proceeds as income
> for that year by voluntarily declining to accept
> payment during that year, or by requesting the
> purchaser not to pay him until a later year, or even by
> voluntarily putting himself under some legal disability
> or restriction with respect to payment. In such
> circumstances, he will be deemed in constructive
> receipt of the income notwithstanding his refusal to
> accept payment or his self-imposed restraints on
> payment. [Emphasis supplied.]

Petitioners contend that tax considerations played no part

in the decision to renew Mr. Boccardo's note and that there were

valid business reasons for the renewal. However, the presence or

absence of a tax avoidance motive does not control the

applicability of the constructive receipt doctrine here. As was

stated in Loose v. United States, 74 F.2d 147, 150 (8th Cir.

1934):

> If the sole basis and reason for constructive receipt
> of income were the avoidance of fraud in tax evasion,
> * * * [the taxpayer's] argument would carry much force
> because there was obviously no thought of tax evasion
> here. However, the strongest reason for holding
> constructive receipt of income to be within the statute
> is that for taxation purposes income is received or
> realized when it is made subject to the will and
> control of the taxpayer and can be, except for his own
> action or inaction, reduced to actual possession. So
> viewed, it makes no difference why the taxpayer did not

> reduce to actual possession.  The matter is in no wise dependent upon what he does or upon what he fails to do.  It depends solely upon the existence of a situation where the income is fully available to him.
> * * *

Accordingly, we find that Sainte Claire constructively received the principal amount of the 1968 note during 1988, which Sainte Claire then re-advanced to Mr. Boccardo.  Accordingly, Sainte Claire is required to recognize in its 1988 taxable year the gain realized on the sale of the Arboga and Gridley ranches.  Because we decide the question of constructive receipt in respondent's favor, it is unnecessary for us to consider whether a disposition of the 1968 note occurred within the meaning of section 453B.

To reflect the foregoing and the parties' stipulation of settled issues,

<u>Decisions will be entered under Rule 155</u>.